232 So.2d 918 (1970)
MID CITY FINANCE CO., Inc.
v.
Ottomese R. COLEMAN and Oties Coleman.
No. 3818.
Court of Appeal of Louisiana, Fourth Circuit.
March 9, 1970.
*919 Edward P. Jerry and Richard J. Morrow, New Orleans, for defendants-appellees.
Cologero & Kronlage, Charles A. Kronlage, Jr., New Orleans, for defendant-appellant William H. Durio.
Before SAMUEL, DOMENGEAUX and SWIFT, JJ.
SWIFT, Judge.
On April 21, 1967, the defendants, Mr. and Mrs. Oties Coleman, purchased a 1962 Pontiac automobile from William H. Durio, who was doing business in New Orleans as William H. Durio Auto Sales, and title was placed in Mrs. Coleman's name. Part of the consideration for the sale was a promissory note which was acquired by plaintiff, Mid City Finance Co., Inc. After making approximately two and a half payments the defendants defaulted on the note, and suit was instituted against them by the plaintiff. The defendants' answer contained a third party demand against Mr. Durio seeking to avoid the sale because of a redhibitory defect in the automobile, and praying for judgment against the third party defendant in the same amount as any judgment granted the plaintiff against the defendants.
After trial judgment was rendered in favor of Mid City Finance Co., Inc. against Mr. and Mrs. Coleman for the unpaid balance due on the note with interest, attorney's fees and court costs, and a similar judgment was rendered by default for the Colemans on their third party demand against Mr. Durio. The latter judgment was subsequently set aside and a new trial ordered. However, it was reinstated by the court after the second trial at which all parties were represented by counsel.
Only Mr. Durio has appealed and, therefore, the correctness of the judgment rendered on the main demand is no longer at issue.
The testimony of Mr. and Mrs. Coleman and Mr. Durio with respect to the condition of the automobile at the time of the sale and what transpired thereafter conflicted in numerous respects.
Mr. Coleman testified that the automobile did not function properly when they drove it from Mr. Durio's lot on the day of the sale. He also had trouble getting the car started at his place of employment that evening, so it was driven directly back to William H. Durio Auto Sales. He was told to take the automobile to a mechanic on the Airline Highway for repairs. This was done the following Saturday morning. However, the repairs were not made because the mechanic was too busy. Coleman experienced further difficulty in starting the engine, and on Sunday it quit running entirely when Mr. and Mrs. Coleman were on their way to church. It was necessary to tow the vehicle home that day, and the following Monday it was hauled to William H. Durio Auto Sales and left there. Mr. Coleman said that he, his wife and his stepson, Charles Rickes, contacted Mr. Durio on numerous occasions attempting either to get the car fixed or to obtain another one, but they were unsuccessful.
Mr. Durio, who was qualified to some extent as an expert in the field of automobile mechanics, admitted that he had received complaints about Coleman's trouble starting the engine. However, he contended the cause was a worn accelerator or carburetor pump. He said he told Coleman to get this repaired by J & C Esso Service Station, who did most of his mechanical work at the time, but Mr. Coleman wanted a new carburetor. On the other hand, Coleman and Maurice Vignes, *920 a Mid City Finance Company employee, testified Mr. Durio told them the trouble resulted from a missing distributor clamp which he was going to fix as soon as he got a clamp.
Mr. Durio denied the car was brought back to his place of business within a week after the sale. But when it was returned he said they discovered the engine had burned up as a result of overheating. He further testified that Charles Rickes admitted to him such overheating was caused by Rickes' failure to fully tighten the radiator cap. Both Mr. and Mrs. Coleman denied that young Rickes ever drove the car.
Percy Granderson, an employee of a finance company from whom Durio purchased the automobile two or three weeks before it was sold to Mrs. Coleman, testified that he drove the Pontiac on several occasions while it was owned by his employer. Although he was not a mechanic, this witness though it ran well. However, Granderson and Durio disagreed as to whether its air conditioning unit contained a compressor.
The appellant contends the lower court erred principally in its conclusion that the plaintiff established there was a redhibitory defect in the automobile at the time of the sale and in failing to sustain his plea of one year prescription under LSA-C.C. Article 2534.
Redhibition is defined in LSA-C.C. Article 2520 as follows:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
The jurisprudence and principles of law on the subject applicable to sales of automobiles have been reviewed by this court in Stumpf v. Metairie Motor Sales, Inc., La.App., 212 So.2d 705. It was pointed out therein that a buyer does not have to prove the exact cause of the malfunction in order to establish a redhibitory vice. He need only prove the automobile has failed to perform properly in the manner it was intended to perform under conditions of normal use.
Certainly, the Colemans have done so in this case. Despite Mr. Durio's testimony as to the defect which presently exists in the engine and the cause thereof, it is clear this automobile did not operate properly from the beginning and no purchaser would have concluded the sale had he known the car was going to continue to operate in such manner. Thus, Mr. and Mrs. Coleman have borne the burden of proof relative to the unsatisfactory performance of the vehicle at the time of the sale.
Mr. Durio has attempted to establish this vice or defect could have easily been remedied and the reason it was not functioning properly when finally returned to his place of business is that Mr. Coleman's step-son permitted the engine to overheat through negligent operation.
Although the trial judge did not favor us with written reasons for judgment, it is obvious he did not accept appellant's testimony on these disputed factual issues. As in Crawford v. Abbott Automobile Company, Ltd., 157 La. 59, 101 So. 871, the trial judge heard all of the witnesses and concluded the defect existed in the engine at the time of the sale, and that it was not due to misuse by the operators thereafter. The findings of fact of a trial judge will not be set aside unless manifestly in error. We cannot say that such error exists in this case.
Appellant argues that the failure to call young Rickes as a witness should be construed unfavorably against the appellees. Apparently, the trial judge chose to accept Mr. and Mrs. Coleman's testimony as opposed to Mr. Durio's on the question of *921 whether or not Rickes actually drove the car after the purchase. In such case it was not established that he should have had any peculiar knowledge essential to their case, which is a prerequisite to such unfavorable presumption. In any event we note that Mr. Durio's answer contains no averment to the effect that Rickes or the Colemans misused the automobile after the sale. Therefore, this did not become an issue in the case until Durio took the stand near the conclusion of the trial. At that time Charles Rickes was not living with the Colemans and was working some twenty miles out of town. Thus, it can hardly be said the Colemans should have had him in city court or even that he was available to them as a witness when they learned that Durio was contending Rickes was responsible for the defective condition of the car.
The lower court also did not err in failing to maintain appellant's plea of prescription.
LSA-C.C. Article 2534 provides that the redhibitory action must be instituted within one year from the date of the sale, except where the seller has knowledge of the vice and neglects to declare it to the purchaser. In such case the limitation begins to run on the buyer's discovery of the defect. However, where the seller attempts to remedy such defect prescription begins to run only from the time he abandons the attempt to repair same. Delahoussaye v. Domingues Chevrolet, Inc., La.App., 137 So.2d 356; Goff v. Dewey Olivier, Inc., La.App., 137 So.2d 393; and Brown v. Dauzat, La.App., 157 So.2d 570.
Although the sale in this case took place on April 21, 1967, Maurice Vignes, the representative of the finance company to whom Mr. Durio negotiated the Coleman note, testified positively that when he called the latter over the telephone on May 11, 1967, at Mr. Coleman's request, Durio said he had put a new battery and starter in the car and was going to fix the distributor just as soon as he got in a distributor clamp. Thus, it is obvious the seller was still attempting to remedy the defect, which he then contended was the cause of the automobile's malfunction. This was less than one year from the date Mr. and Mrs. Coleman filed their third party demand containing the redhibitory action. Consequently, the plea of one year prescription is unavailing.
The judgment of the lower court must be amended, however, to provide for restoration of the title to the vehicle to William H. Durio as the sale has been set aside.
For the foregoing reasons, the judgment rendered by the lower court on the third party demand in this suit is affirmed, provided that the third party plaintiffs, Ottomese R. Coleman and Oties Coleman, deliver a properly executed certificate of title to the automobile involved in this suit to third party defendant, William H. Durio, within thirty days after this judgment would otherwise become final. In default of such delivery of title within the specified time the third party defendant, William H. Durio, may by rule and upon showing that this condition has not been complied with, have such judgment cancelled by the lower court. A reasonable extension of the period herein provided may be granted by the trial judge, if necessary. The lower court judgment is affirmed in all other respects, and appellant is cast with the costs of this appeal.
Amended and affirmed.