# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #023

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **9th day of May, 2025** are as follows:

**BY Griffin, J.:**

2024-C-01007    JAMES MCCORMICK, D.D.S., AND KIM MORRIS MCCORMICK VS. JOE E. "BUTCH" FORD, JR., WILLIAM "BILL" ALTIMUS, JEROME DARBY, AND CARLOTTA ASKEW-BROWN *(Parish of Bossier)*

AFFIRMED. SEE OPINION.

SUPREME COURT OF LOUISIANA

No. 2024-C-01007

JAMES MCCORMICK, D.D.S., AND KIM MORRIS MCCORMICK

VS.

JOE E. "BUTCH" FORD, JR., WILLIAM "BILL" ALTIMUS, JEROME DARBY, AND CARLOTTA ASKEW-BROWN

*On Writ of Certiorari to the Court of Appeal, Second Circuit, Parish of Bossier*

**GRIFFIN, J.**

We granted this writ to determine whether prescription has run on an action for a violation of subdivision regulations and, if so, may a parish withhold a building permit based on lack of compliance with the regulation. Finding prescription has run, the subject property enjoys non-conforming status and therefore under those circumstances issuance of a building permit is warranted.

## FACTS AND PROCEDURAL HISTORY

James and Kim McCormick own approximately 128.75 acres (the "McCormick Tract") in Bossier Parish, Louisiana, which is accessed by a private drive that extends from a public road, called Modica Lott Road. Where the McCormick Tract and Modica Lott Road meet, the public road ends, and a private asphalt passageway (the "private driveway"), approximately ten feet in width, begins. The private driveway provides passage not only to the residence on the McCormick Tract but also to residences and tracts of land lying to the north via a private servitude of passage that was recorded in 1979. The private driveway is located entirely on the McCormick Tract from the point it leaves the public road.

A brief history of the McCormick Tract and related issues is instructive. When a larger tract of property is divided into smaller tracts, those smaller tracts are often referred to as a "split-out." Under the Bossier Parish Subdivision Code, the deed to

a split-out is required to have a plat description of the property rather than a metes and bounds description. If a property owner does not conform to the requirements set forth in Section 110 regarding the sale and recordation of a split-out, the property owner is subject to monetary penalties, the withholding of approvals or permits, stop orders, a temporary restraining order or other judicial remedies, and potential prosecution in accordance with Section 110-33 and Section 1-13 of the Bossier Parish Subdivision Code. The right of the Bossier Parish Police Jury ("BPPJ") to enforce these provisions is codified in La. R.S. 9:5625, which provides for a five-year prescriptive period to bring an enforcement action.

Applicability of the provisions to the McCormick Tract is traced back to the ancestor in title who owned what was a 295-acre tract. That prior owner began selling numerous split-out tracts of various sizes and descriptions in 1977. In 2006, the prior owner sold 146 acres to an immediate ancestor in title of the McCormicks, who, in turn, in 2014, sold 128.75 acres to MCMC Development, LLC – the McCormick Tract. The deed for split-out to the McCormicks was recorded in the conveyance records of Bossier Parish and failed to satisfy the subdivision regulations previously enacted by BPPJ. After the McCormicks' residence was damaged by a fire in 2018, they sought to move from that home and build a new residence on the McCormick Tract. On December 17, 2020, they applied to BPPJ for the issuance of a building permit for the construction of their residential home on the private driveway.

By letter dated March 29, 2021, BPPJ denied the building permit, citing violations of the following:

- Section 110-66(b) of the Bossier Parish Subdivision Code, which states no building permit can be issued in a subdivision for which a final plat has not been approved and filed.

- La. R.S. 33:116, which states that when a planning commission has adopted a major street plan, no permit shall be issued for a building unless the street giving access to the lot upon which

2

such structure is proposed to be placed has accepted or opened or has otherwise received the legal status of a public street prior to the application.

- Bossier City Unified Development Code Section 11.4.3, which states that all lots of a subdivision shall have frontage on a public street except that private streets may be approved if built to city and parish construction standards.

In response, the McCormicks filed a mandamus action and an amended and restated petition against Joe E. Ford, in his official capacity as Parish Engineer for Bossier Parish, seeking a court order requiring the issuance of the building permit. The trial occurred on November 22, 2022. During the course of the trial, Mr. Ford testified that the McCormicks acquired ownership of the tract at issue on March 10, 2014, which was recorded in the conveyance records of Bossier Parish, and that the split-out would have been a violation of the regulations at the time it was recorded. Ford admitted that since BPPJ has a small office, they normally learn that a subdivision has been illegally split-out only when the landowner seeks a building permit. The McCormicks then introduced evidence of numerous instances of tracts being sold and building permits being issued that mirror their situation. Among those identified was the 2014 building permit issued to the McCormicks' neighbor, Ken Lowery.

The trial court ruled that BPPJ had to issue a building permit to the McCormicks for the construction of the residence. However, it made the issuance of the permit subject to the McCormicks' compliance with one of the two following provisions:

1. The driveway from the public portion of Modica Lott Road to the residence must be separate from the existing road that is the subject of the 1979 servitude of passage, or, alternatively,

2. The driveway to the residence can use the road that is the subject of the 1979 servitude of passage, but only if that road is publicly dedicated and the Bossier Parish police jury agrees to maintain it or imposed to the city and parish construction standards that are applicable under the Uniform Development Code Section 11.4, Subsection 3.

3

The court of appeal reversed, observing that it is apparent from the record and testimony that BPPJ set up the issuance of building permits as an effective trigger or "choke point" to enforce subdivision regulations. *McCormick v. Ford*, 55,689, p. 9 (La.App. 2 Cir. 5/22/24); 387 So.3d 904, 910. That calculated risk of the trigger comes with the actual risk that some property owners may not seek a building permit within the time period during which BPPJ has a legal remedy. The court of appeal stated that La R.S. 9:5625(A)(1) is clear that the five-year prescriptive period begins to run "from the first act constituting the commission of the violation." *Id.* at 911. That act was the filing of the illegal subdivision deed, improperly described in metes and bounds, in the parish registry on March 10, 2014, by the McCormicks in violation of Sections 110-63 and 110-194 of the subdivision regulations. The court of appeal thus affirmed the trial court's grant of the building permit to the McCormicks. It reversed to the extent it removed any conditions the trial court placed on the issuance of the building permit.

Mr. Ford's writ application to this Court followed, which we granted. *McCormick v. Ford*, 24-1007 (La. 11/27/24), 396 So.3d 448.

**DISCUSSION**

The issue before this Court is whether in this particular instance the McCormick Tract enjoys non-conforming status by operation of La. R.S. 9:5625 thereby warranting the issuance of a building permit free of any judicially imposed requirements under these circumstances. Statutory interpretation is a question of law subject to *de novo* review. *Benjamin v. Zeichner*, 12-1763, p. 5 (La. 4/15/13), 113 So.3d 197, 201. Reversal of a trial court's determination of a fact requires that an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993).

4

Louisiana Revised Statute 9:5625, provides, in pertinent part:

A. (1) All actions civil or criminal, created by statute, ordinance, or otherwise, … which may be brought by parishes, municipalities, or their instrumentalities or by any person, firm, or corporation to require enforcement of and compliance with any zoning restriction, building restriction, or subdivision regulation, imposed by any parish, municipality, or an instrumentality thereof, and based upon the violation by any person, firm, or corporation of such restriction or regulation, must be brought within five years from the first act constituting the commission of the violation.

B. In all cases where the prescription provided for herein has accrued, the particular property involved in the violation of the zoning restriction, building restriction or subdivision regulation shall enjoy the same legal status as land uses, construction features of buildings or subdivisions made nonconforming by the adoption of any zoning restriction, building restriction or subdivision regulation. La. Rev. Stat. Ann. § 9:5625.

Under this statutory framework, we turn to the matter at hand.

Mr. Ford, as a representative of the BPPJ, primarily argues that the court of appeal incorrectly applied the public records doctrine and the theory of constructive knowledge to hold that the five-year prescription period of La. R.S. 9:5625(A) began to run against the BPPJ on May 10, 2014, the date the McCormick Deed was recorded. The BPPJ argues it was entitled to rely on the McCormicks, the notary public who notarized the McCormick Deed, and the Bossier Parish Clerk of Court to comply with La. R.S. 33:5051 and 33:5052 and Bossier Parish Ordinance, Sections 110-161 and 162. Mr. Ford further argues that imputing constructive knowledge of a deed's statutory violations to the BPPJ is inappropriate where La. R.S. 33:5052 expressly and specifically charges clerks of court (as well as notaries public) with the legal obligation not to record deeds that fail to comply with La. R.S 33:5051 and Bossier Parish Ordinances, Section 110-161. *See also Phillips v. Parker*, 483 So.2d 972, 97 (La. 1986). ("Any theory of constructive knowledge which imputes knowledge of the contents of the public records to third persons forms no part of the public records doctrine.").

The McCormicks counter that based on the plain, unambiguous language of La. R.S. 9:5625, the date when prescription begins to run is dependent on which category of regulation has been violated. Prescription on the enforcement of violations of zoning restrictions, building restrictions, and subdivision regulations begins to run "from the first act constituting the commission of the violation." La. R.S. 9:5625 (A)(1). The McCormicks argue that the violation at issue here was the violation of the Parish's subdivision regulations and that it is undisputed that the first act constituting the commission of the violation was the recordation of the deed to the McCormick Tract on March 10, 2014. They further argue that if the legislature intended for prescription to run on subdivision violations only after notice, the legislature could have easily included subdivision violations with use violations. Because the legislature chose not to do so, the McCormicks argue this clearly leaves courts without discretion to impose a "notice" or "discovery" condition on the commencement of the prescriptive period. Prescription therefore ran five years from the date of recordation, or on March 10, 2019. *See State v. Baudier*, 334 So.2d 197, 199 (La.1976) ("under La. R.S. 9:5625 the parish had two years from the erection of the sign within which to bring an action for enforcement of the restriction, and it could not reckon the prescriptive period from receipt of written notice of the violation"). We agree.

The McCormick Tract now enjoys non-conforming status by operation of La. R.S. 9:5625. The subdivision regulations provide that it shall be mandatory upon any subdivider of land to obtain the approval of the police jury before the recordation of a subdivision and before any sale or transfer of any subdivided property may be made.[1] The parties stipulated that the McCormick Tract was not submitted for approval or approved by the police jury before the deed was recorded in March 2014

---

[1] Section 110-66(b) of the Bossier Parish Subdivision Code.

(or afterward). The recording of the deed transferring the McCormick Tract was therefore a violation of the subdivision regulations and, as correctly observed by the court of appeal, the first act constituting that violation. *McCormick*, 55,689, pp. 9-11, 387 So.3d at 911. This is supported by Mr. Ford's testimony wherein he stated at the time the McCormicks' deed was filed "it was against our ordinances." *See Bryan v. City of Shreveport*, 519 So.2d 328, 331-32 (La. App. 2d Cir. 1988), (interpreting "first act constituting the offense" to be when trees grow to a height in violation of the ordinance, not when the city identified said encroachment because observing as such would otherwise "subject the landowners to the arbitrary and dilatory actions of the city").

Applying the language of subsection A of the statute, the McCormicks' first violation was being allowed to file the deed in the first place. As such the prescriptive period began to run on March 10, 2014. La. R.S 9:5625 (A). In accordance with subsection B of the statute as of March 10, 2019, the McCormick Tract took non-conforming status, grandfathering it in as a legal subdivision due to the running of the five-year prescriptive period. The BPPJ's primary argument rests on its assertion that the courts should ignore the plain language of the statute and interpret it such that the prescriptive period runs from "notice of the first act constituting commission of the violation." However, while the enforcement of illegal subdivisions may be a difficult task for the BPPJ, to hold that prescription does not begin to until the BPPJ decides to investigate a violation is not in accord with Louisiana law. See *McCormick* 55,689, p. 11, at 911, (citing, *Compass Energy Operating, LLC v. Robena Prop. & Royalty Co., Ltd.*, 52,468 (La. App. 2 Cir. 2/27/19), 265 So.3d 1160); *Thomas v. Lewis*, 475 So.2d 52 (La. App. 2 Cir. 1985)).

The McCormicks also introduced evidence of numerous instances of split-out tracts being sold and building permits being issued that mirror their situation. Among those identified was the 2014 building permit issued to the McCormicks' neighbor,

7

Ken Lowery, who owns property off the private driveway and who sought a building permit from BPPJ. This further indicates the BPPJ had actual notice of the various subdivision violations. The trial court itself noted in its written reasons for judgment that the BPPJ attempted to have the private drive publicly dedicated in 2014 during its dispute with Lowery. The BPPJ's failure to enforce the subdivision violation against the McCormicks within the five-year prescriptive period resulted in the McCormick Tract attaining non-conforming status.

The McCormick Tract also complies with La. R.S. 33:116.[2] The 128-acre McCormick Tract is the "lot" for purposes of Section 116. The parties stipulated that, "[t]he McCormick Tract abuts and is directly connected to the public road known as Modica Lott Road." The McCormick Tract complies with Section 116 because "the street giving access to the lot" is a public street, i.e. the public road known as Modica Lott Road. The record therefore establishes that the trial court's ruling was manifestly erroneous on this issue.

## DECREE

For the foregoing reasons, the ruling of the court of appeal is affirmed.

**AFFIRMED**

---

[2] La. R.S. 33:116 provides:

> When a planning commission has adopted a major street plan, no structure shall be erected on any lot within the affected area, nor shall a building permit be issued therefor unless the street giving access to the lot upon which such structure is proposed to be placed has been accepted or opened as or has otherwise received the legal status of a public street prior to that time, or unless such street corresponds with a street shown on the official master plan or with a street on a subdivision plat approved by the planning commission or with a street on a street plat made by and adopted by the commission or with a street accepted by the local legislative body, after submission to the planning commission, by a favorable vote required in R.S. 33:115.